## JOSIAH CHASE vs. SAMUEL HAZELTON.

Where land has been set off on execution, and there is a variance as to the estimated value of the land between the report of the appraisers and the officer's return, the officer's return is to govern, and is conclusive as to the levy.

Case, in the nature of waste, lies against a stranger, though waste will not.

Where an individual conveys by quitclaim, releasing all his right in the premises to another during his life, the estate is still subject to impeachment of waste, unless there is express provision to the contrary.

Clearing of land, found by the jury to be bad husbandry, is waste.

THIS was an action of case in the nature of waste. The declaration alleged that one Margaret Forsaith, being seized of a certain close in Chester, for the term of her life, and the plaintiff being seized of the reversion, that the defendant, on the 10th of June, 1832, entered the close, and cut down and carried away eighty hemlock trees, to the injury of the plaintiff's reversionary interest.

There was also a count in trover for the trees.

The cause was tried upon the general issue, when it appeared that one T. Forsaith being seized of the *locus in quo*, on the 26th of January, 1816, by deed conveyed to Margaret Forsaith all his right, title, interest, estate and demand, of, in and unto the same during the natural life of the said Margaret.

It further appeared, that the plaintiff, having recovered a judgment against T. Forsaith for $271 35 debt, and $23 13 costs of suit, sued out a writ of execution, and caused the same to be extended upon the said land the 28th of October, 1826.

The appraisers stated, in their certificate of appraisal, that the said land, and two other tracts which they appraised, were of the value of $213 94, and that they set them off in full satisfaction of the execution—but the officer, in his return stated the execution to be satisfied in part, to wit., for the sum of $197 68.

It further appeared, that previous to the entry of the defendant, one James Dunovan bargained with Margaret Forsaith to clear two acres of the *locus in quo*, and to take his pay in timber, and that there was upon the two acres between fifty and sixty trees : That the defendant agreed with Dunovan to help him cut the timber, and haul the logs to the mill of the defendant, to be sawed into boards, and take his pay in boards ; and that the defendant furnished a team, and assisted in cutting and hauling the logs to the mill, and took part of the boards in payment.

On the part of the defendant, one witness testified that the trees upon the two acres were in general small, and that it was a proper part of the land to be cleared and turned into pasture.

The court submitted it to the jury to say whether, in a course of good husbandry, it was proper to clear the lands —what was the amount of damage done to the reversion by clearing the land and taking away the timber, and what was the value of the timber upon the land.

The jury found that it was not proper, in a course of good husbandry, to clear the land, and that the damage arising to the reversionary interest was $23, and the value of the timber was $13 50.

Whereupon a verdict was taken, by consent, for the plaintiff, subject to the opinion of the court upon the foregoing case.

*Bartlett*, for the defendant, contended that the plaintiff had offered no legal evidence of a title to the reversion ; that the levy under which he claimed was imperfect, as the officer had set off the land at a less sum than the amount at which it was appraised. That the appraisers' report is a part of the officer's return, he cited *Mead et al.* vs. *Harvey et al.*, 2 *N. H. R.* 495.

It was further contended, that the action of waste was where the reversion was created by act of law, and not

where the party became the reversioner by his own act. 4 *Kent's Com.* 78 : That the right of action, if any existed, was against the tenant for life and not against a stranger : That the *Statute of Gloucester* only gave a right of action against the tenant : That the tenant was the ostensible owner, and was responsible to the reversioner, but that strangers were responsible to the tenant merely,—and in support of these positions cited *Coke Lit.* 54, *a ; Jackson on Real Actions* 332 ; 2 *Swift's System* 84 ; 3 *Dane's Ab.* chap. 78, *art.* 11, *sec.* 3, 6 *and* 13 ; *Com. Dig., Waste C,* 4 ; 3 *Pick.* 203, *Fay* vs. *Brewer ;* 5 *Pick.* 191 ; 11 *Johns.* 431.

That no waste was committed he cited 3 *Dane* 337 ; 7 *Johns.* 227 ; 18 *do.* 431 ; 3 *Starkie's Ev.* 1668 ; *Findlay* vs. *Smith,* 6 *Munf.* 134.

*Pillsbury,* for the plaintiff, in reply to the objection as to the levy, cited *Williams* vs. *Amory,* 14 *Mass.* 20, and contended that the officer's return was conclusive, and could not be contradicted by the appraisers.

Also that the tenant for life, or years, who became such by deed, grant, devise, or otherwise, is liable to an action of waste in the same manner as one who becomes so by act of law, and that the *Statute of Gloucester,* 6 *Ed.* I. is a part of our common law. *Sackett* vs. *Sackett,* 8 *Pick.* 314 ; *Jackson on Real Actions* 20, 332, 341 ; 4 *Kent's Com.* 78 ; *Brown* vs. *Dinsmoor,* 3 *N. H. R.* 103 ; *Woodfall's Land. and Ten.* 446 ; 3 *Saund.* 252, *note* 7.

It was contended, farther, by the plaintiff's counsel, that the conveyance in this case was such as to render the life estate subject to impeachment of waste : That the conveyance was a mere release, and did not amount to a grant of an estate independent of the party's rights and claims which might subsequently accrue to him as reversioner.

A release cannot amount to a grant. *Co. Lit.* 301, *b.* Nothing can excuse from impeachment of waste except an

express condition to that effect.   In 8 *Pick.* 314, the court say, "that tenants are punishable for waste, unless the will " or lease *expressly excused* them—and nothing but an *ex-* "*press declaration* of such intents should have that effect." He also cited to this point, *Co. Lit.* 345, *b ;* and *Shep. Touch.* 345.

If the life estate in this case is not impeachable for waste, still the property of the trees when cut is in the plaintiff, he being the owner of the reversion and inheritance, and therefore he is entitled to recover on his count in trover the value of the timber, as assessed by the jury.   *Herlakenden's case,* 4 *Co.* 63.

UPHAM, J. delivered the opinion of the court.   The *locus in quo* in this case was originally the property of one T. Forsaith, who had created a life estate in the same by grant, retaining the reversion in himself.   The plaintiff subsequently attached Forsaith's interest in the premises, and caused the same to be set off on execution ; and this action is brought against the defendant to recover the damage done by him to the reversionary interest which the plaintiff had thus acquired.

An exception has been taken to the title of the plaintiff by his levy, for the reason that the appraisers, in their return, allege that the land was set off in full satisfaction of the execution, whereas the officer alleges it to have been set off in part satisfaction of the execution, at a sum less than that named by the appraisers by $16 26, the amount of his fees.

It is contended that, on account of this variance, the levy is void ; but this conclusion cannot be sustained.   The appraisers' report constitutes a portion of the officer's return so far as he relies upon it and adopts it ; but in those cases where there is a variance betwixt the report of the appraisers and the officer's return, the officer's return is to govern, and is conclusive as to the levy.   This doctrine was holden in the case of *Lucas and Nudd,* at the last July term in

Grafton, and is sustained also by the Massachusetts court in *Williams* vs. *Amory*, 14 *Mass.* 20.

It is also contended that waste lies where the reversion is created by act of law, and not where it has been created by the act of the party. As a reason for this distinction, it is said that no action of waste lies, in such case, in favour of the grantor of an intermediate estate, because he might have secured himself by covenant for a forfeiture, if he chose to protect his remaining interest, whereas when the estate is created by law, the law only can provide for the security of the reversioner. 2 *Inst.* 300. 2 *Saunders* 252. *a.*

This was the case by the ancient common law, but it has been long since altered by the statutes of *Marlebridge*, and *Gloucester*, so that since the 6th of Edward I., waste has lain in England, in all cases, whether the reversion has been created by act of law, or not; and such is the case here, so far as those statutes have been adopted. Whether these statutes constitute a portion of our common law our courts have not been called upon to decide. They are considered as adopted as part of the law of Massachusetts, except so far as modified by their statutes. *Sackett et al.* vs. *Sackett ;* 8 *Pick.* 309.

But waste is not the remedy here proposed. This action does not lie against a stranger, either by the common law or by statute. The *Statute of Gloucester* only gives the action of waste against the tenant for life, or a term of years. The remedy is of a highly penal character, designed to bear against those privy to the estate, giving treble damages, and judgment for the place wasted—and is not intended to alter the rule of damages where trespasses have been committed by a stranger.

*Case in the nature of waste* is a different action. This is a common law remedy, attended with the imposition of ordinary damages merely, and is not possessory in its character. It does not require that the defendant should be charged as lessee, or assignee, which is the case in an action

of waste, 2 *Saund.* 234, or that the writ should conclude by stating the waste to have been to the disinheriting of the plaintiff : *Co. Lit.* 285, *a ;* and there is nothing in its character necessarily to prevent its lying against a stranger.

There are cases of incidental waste, where it seems never to have been controverted but an action of this description will lie against a stranger. Thus it is said a reversioner, as well as a lessee for years in respect of his possession, may have an action upon the case against a stranger for surrounding his land with water, whereby his trees became corrupt and decayed, to the prejudice of his inheritance. And the lord of the manor may have an action upon the case against a stranger who cuts down trees upon a tenement of his copyholder to the prejudice of his inheritance. *Com. Dig. Action on the case for misfeasance, a.* 2 ; 3 *Lev.* 209, 131.

The remedy in this action is co-extensive with the liability to injury, whether from the tenant or a stranger ; and the reversioner has a right to elect against whom to proceed. We know of no authority which restricts the action of case in the nature of waste within less limits ; and we think it may be sustained by a reversioner against a stranger for an injury to the reversionary estate while in the possession and occupation of a tenant. 1 *Chit.* 142 ; 1 *Saund.* 322, *n* 5 ; *Co. Lit.* 57 ; *Elliot* vs. *Smith,* 2 *N. H. R.* 430; *Brown* vs. *Dinsmore,* 3 *N. H. R.* 103 ; *Randall* vs. *Cleavland,* 6 *Conn.* 328.

There is another question which arises in this case,— whether this conveyance of the life estate is without impeachment of waste ? It is a conveyance, by which Forsaith, the grantor of the intermediate estate, " releases and " quitclaims all his right, title, interest, estate and demand " of, in and unto, the premises in question, to have and to " hold the same during the natural life of the grantee."

These words do not seem necessarily to convey any greater or different estate than a life estate created by act of law. Where the life estate is created by the act of the

party we have considered it settled that he has his remedy for an injury to the reversion, by an action of case, in the nature of waste. If such a remedy exists, the party ought not to be precluded from it except by his evident or expressed intention. And the usual form of barring an individual from this remedy is by conveyance " without impeachment of waste."

The authorities cited by the plaintiff's counsel seem to be in point that " if a tenant in fee release to his tenant for life all his right, yet he shall have an action of waste." *Co. Lit.* 345, *b.* And " if one be seized of land in fee, and "makes a lease of it to another for life, and afterwards " releases all his right in the land for the life of the tenant " for life, so as neither he nor his heirs shall have claim, or " challenge any thing or right in that land for the life of "the tenant for life, by this release nothing is extinct or " discharged but the causes of action of waste, that were " then, and not any cause that shall happen afterwards." *Shep. Touch.* 345.

We hold that the conveyance in this case is similar in its character to those cited, and that a life estate conveyed in the terms, as named in this instance, is subject to impeachment of waste.

What is waste is a subject open to much discussion ; and it is contended that no waste has been here committed. How far the tenant may be permitted to go in any alteration of the course of husbandry, or whether any alteration would be allowed in this respect, has not been determined in this State.

The American doctrine on the subject of Waste is somewhat varied from the English law. It has been holden in New-York that where wild and uncultivated land, wholly covered with wood and timber, is *leased,* the lessee may fell part of the wood and timber, so as to fit the land for cultivation, without being liable for waste ; and it is said that it

must be left to the sound discretion of a jury, under the direction of the court, to determine to what extent wood may be cut, before the tenant is guilty of waste. There are similar authorities in some other States. *Jackson et als.* vs. *Brownson,* 7 *N. Y. Rep.* 227; *Hastings* vs. *Crunkleton,* 13 *Yates' Rep.* 261; *Findley* vs. *Smith,* 6 *Munf.* 134; *Crouch* vs. *Puryear,* 1 *Randolph's Rep.* 253; *Parkins* vs. *Cone,* 2 *Hayw.* 339; *ditto* 110; 4 *Kent's Com.* 77.

There can be no hesitation in holding that a clearing up of land, which a jury have passed upon as bad husbandry, and where there is no pretence that the trees cut off are for firewood, fencing, or any of the *botes* allowed to the tenant, is waste. The exceptions taken cannot prevail, and there must be

*Judgment upon the verdict.*